UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:16-CR-00004-TBR

UNITED STATES OF AMERICA                                                                 Plaintiff

v.

ROBERT J. CISSELL                                                                        Defendant

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Robert Cissell's motion to suppress evidence. (DN 12). The United States has responded. (DN 16). The Court held a suppression hearing on August 23, 2016. (DN 15). Seth Hancock appeared on behalf of the United States. Dennis Null, Jr. appeared on behalf of Defendant Cissell. Terri Turner was the court reporter. For the following reasons, Defendant's motion to suppress is DENIED.

## BACKGROUND

Defendant Robert J. Cissell was driving when he was stopped by Deputy Richard Edwards. During the stop, Deputy Edwards searched Cissell's vehicle, finding among other things a sawed-off shotgun. Cissell has been charged with possessing the weapon in violation of 26 U.S.C. 5841, 5861(d), and 5781. (DN 1). Cissell has moved to suppress this evidence on the grounds that there was no reasonable suspicion for the search. (DN 12). This Court conducted a suppression hearing. During that hearing the Court heard testimony from two officers who searched the vehicle. The Court also viewed video taken by a body camera worn by Deputy Edwards.

On July 25, 2015, Deputy Richard Edwards of the Graves County Sheriff's Department pulled over Cissell after Cissell ran a stop sign at the intersection of Backusburg and 3rd Street in Mayfield, Kentucky. The parties do not dispute the basis for the initial stop. After initiating the traffic stop, Deputy Edwards asked Cissell to provide his driver's license, insurance, and registration. Cissell produced his license but could not locate insurance or registration.[1] Deputy Edwards testified that during this initial conversation he could smell the odor of marijuana coming from the vehicle. Deputy Edwards requested permission to search the vehicle, which Cissell initially granted. Before conducting the search, Deputy Edwards returned to his vehicle to radio dispatch about Cissell and his vehicle. Deputy Edwards testified that there was a bulletin out regarding Cissell because Cissell had allegedly posted on Facebook a photo of himself holding an AK 47 and making threatening statements towards law enforcement.

Before Deputy Edwards could return to Cissell's vehicle, Cissell informed Deputy Edwards that he was revoking his permission to search. At that time, Deputy Edwards requested a K-9 unit to run a drug detecting dog around the vehicle. Detective Sergeant David Clark arrived with a dog trained to alert to the presence of narcotics. Detective Sergeant Clark testified that when he arrived, Deputy Edwards informed him that Deputy Edwards had smelled marijuana in Cissell's vehicle. Detective Sergeant Clark brought the dog around the vehicle. The dog alerted at both the driver-side door and the trunk.

---

[1] Deputy Edwards testified that it was the policy of Graves County Sheriff's Department to tow vehicles if the owner could not provide proof of ownership and insurance. The owner could then retrieve the vehicle by providing proof of the same to the tow company.

The officers then proceeded to search the vehicle. They found a clear cellophane wrapper with white residue on it and a large orange prescription bottle with marijuana residue inside it. They also found a rifle, sawed-off shotgun, knife, and a club.

Cissell argues this evidence should be suppressed because law enforcement did not have a reasonable suspicion to prolong his stop past the time needed to issue him a citation for running a stop sign.

## STANDARD

The Fourth Amendment protects the "right of people to be secure in their persons . . . against unreasonable seizures." U.S. Const. amend. IV. "[It] protects people, not places, and provides sanctuary for citizens wherever they have a legitimate expectation of privacy." *Minnesota v. Olson,* 495 U.S. 91, 96 n. 5 (1990) (citation omitted). "The Fourth Amendment requires that searches and seizures be reasonable." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000). "A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *Id*. (listing exceptions).

## DISCUSSION

The Supreme Court case of *Terry v. Ohio*, 392 U.S. 1 (1968) "established the legitimacy of an investigatory stop 'in situations where the police may lack probable cause for an arrest.'" *Arizona v. Johnson*, 555 U.S. 323, 330 (2009) (citation and punctuation omitted). "[M]ost traffic stops resemble, in duration and atmosphere, the kind of brief detention authorized in *Terry*." *Berkemer v. McCarty*, 468 U.S. 420, 440 n. 29 (1984). "Furthermore, the Court has recognized that traffic stops are 'especially fraught with danger to police officers.'" *Arizona*, 555 U.S. at 330 (*quoting Michigan v.*

*Long*, 463 U.S. 1032, 1047 (1983)). "The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Maryland v. Wilson*, 519 U.S. 408, 414 (1997) (citation omitted).

"A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation." *Arizona*, 555 U.S. at 333. "The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop." *Id*. "Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave." *Id*. "Once the purpose of the traffic stop is completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable and articulable suspicion that criminal activity was afoot." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999); *Arizona*, 555 U.S. at 333 ("officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.").

"When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). The "totality of the circumstances approach allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Martin*, 289 F.3d 392, 398 (6th Cir. 2002). Courts engage in an

individualized analysis with respect to the facts of each case. *United States v. Garrido*, 467 F.3d 971, 982 (6th Cir. 2006) (collecting cases).

In this case, Deputy Edwards pulled Cissell over at 8:56 pm. At 9:02 pm, Cissell granted Deputy Edwards permission to search his vehicle. At 9:09 pm, Cissell revoked permission. Immediately thereafter, Deputy Edwards ordered a K-9 unit to assist. At 9:24 pm, the drug detecting dog began walking around the vehicle, ultimately alerting at the driver's side door and the trunk. At 9:31 pm, one of the officers can be heard saying he smells marijuana while they search the vehicle.

Cissell argues Deputy Edwards unnecessarily prolonged the traffic stop to conduct a search of the vehicle. In general, the use of a dog to conduct a sniff test for drugs during a traffic stop does not infringe on the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). However, the sniff test must occur during the normal course of the traffic stop, meaning that the traffic stop cannot be "unreasonably prolonged" to accommodate it. *Id*. The Court agrees that in this case the traffic stop appears to have been prolonged so that a K-9 unit could conduct a sniff test. However, a traffic stop may be permissibly prolonged if the officer has a reasonable suspicion of criminal activity. *Hill*, 195 F.3d at 264.

In this case, the Court finds that Deputy Edwards' detection of a marijuana smell during his initial stop of Cissell provided reasonable suspicion to prolong the stop and request a K-9 unit for assistance. The smell of marijuana provides probable cause to search a vehicle. *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004). Deputy Edwards testified that he could smell marijuana when he initially approached the vehicle. Deputy Edwards also recorded in his incident report the fact that he smelled marijuana

5

when he first approached Cissell.  Furthermore, Detective Sergeant Clark testified that when he first arrived on the scene, Deputy Edwards informed him that he had smelled marijuana in the vehicle.  In light of these facts, the Court finds Deputy Edwards claim that he smelled marijuana when he stopped Cissell to be credible and to provide reasonable suspicion for prolonging the stop to order a K-9 unit.

Cissell questions whether Deputy Edwards actually smelled marijuana when he initially spoke with Cissell.  Cissell argues no drugs were actually found inside the vehicle.  (DN 12).  However, Detective Sergeant Clark testified that he found a large orange prescription bottle inside an armrest.  A strong smell of marijuana emanated from the bottle, and once it was unscrewed, Detective Sergeant Clark could observe marijuana residue inside it.  Cissell also questions Deputy Edwards' decision not to charge Cissell with possession of marijuana or to require Cissell to pass a DUI test.  However, Deputy Edwards testified that he did not observe Cissell driving erratically and had no basis to believe Cissell was under the influence.  Furthermore, only a trace amount of marijuana was found.  These facts, coupled with the fact that the officers discovered Cissell in possession of a sawed-off shotgun for which Cissell was charged, readily explains their decision not to charge Cissell with a drug offense.  Finally, Cissell argues that Deputy Edwards would have announced he smelled marijuana when he first interacted with Cissell.  Instead, neither officer could be heard on the video stating they smelled marijuana until they were in the vehicle.  However, the Court finds that an officer such as Deputy Edwards who is seeking consent to search a vehicle would have good reason to remain silent about smelling marijuana until it was located.  The fact that Deputy

Edwards ordered a K-9 unit to assist him shortly after Cissell revoked[2] consent for the search is further evidence that he did smell marijuana when he first interacted with Cissell.

The Court also notes that Deputy Edwards testified that there was a bulletin out regarding Cissell because Cissell had allegedly posted on Facebook a photo of himself holding an AK 47 and making threatening statements towards law enforcement. While the smell of marijuana alone was sufficient to justify a prolonged traffic stop, an officer aware that a driver had made threats against law enforcement would have additional reason to suspect that the driver was engaging in illegal activity.

Finally, Cissell analogizes this case to the recent Supreme Court case *Rodriguez v. United States*, 135 S. Ct. 1609 (2015). In *Rodriguez*, Officer Morgan Struble pulled over a car just after midnight after observing it swerve onto the shoulder of the road. *Id*. at 1612. Officer Struble ran the driver's license and registration, then issued him a warning. This was completed by approximately 12:28 a.m. *Id*. at 1613. Although the traffic stop was complete, Struble detained the vehicle until a second unit arrived, allowing Struble to walk his dog around the vehicle. The dog alerted to the presence of methamphetamine. *Id*. The Magistrate Judge found the "detention for the dog sniff . . . was not independently supported by individualized suspicion." *Id*. at 1616. The Supreme Court held there was no other justification for prolonging the traffic stop. *Id*. This case is distinguishable from *Rodriguez* because this Court finds that, although the traffic stop

---

[2] It does not appear Deputy Edwards relied upon Cissell's revocation of consent as grounds for establishing reasonable suspicion, nor does this Court include that fact in its analysis. *Compare United States v. Wood*, 106 F.3d 942, 946 (10th Cir. 1997) ("The failure to consent to a search cannot form any part of the basis for reasonable suspicion.") *with United States v. Orsolini*, 300 F.3d 724, 728 (6th Cir. 2002).

was prolonged, it was based off an officer's detection of marijuana, which is reasonable suspicion justifying a prolonged stop.

Accordingly, IT IS HEREBY ORDERED that Defendant's motion to suppress (DN 12) is DENIED.